**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JOSHUA SHEFFER,

          Plaintiff,

    v.              9:18-CV-1180
                  (LEK/DJS)

CORRECTIONAL OFFICER FLEURY, *et al.*,

          Defendants.

**APPEARANCES:**         **OF COUNSEL:**

JOSHUA SHEFFER
Plaintiff, *Pro Se*
16-A-1894
Marcy Correctional Facility
9000 Old River Road, P.O. Box 3600
Marcy, NY 13403

HON. LETITIA JAMES       KOSTANDINOS D. LERIS, ESQ.
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

  On October 1, 2018, *pro se* Plaintiff Joshua Sheffer ("Plaintiff") commenced this action pursuant to 42 U.S.C. § 1983, asserting claims arising from his confinement in the custody of the Department of Corrections and Community Supervision ("DOCCS") at Upstate Correctional Facility ("Upstate"). Dkt. No. 1, Compl. Presently before this Court is Defendants' Motion for Summary Judgment, and a Partial Motion to Dismiss by

- 1 -

Defendants Smith, Prack, and Martuscello, Dkt. No. 24, which Plaintiff has opposed in part.[1] Dkt. No. 31, Pl.'s Opp. Defendants contend that Plaintiff has failed to exhaust his administrative remedies and that Plaintiff failed to establish personal involvement with respect to Defendants Smith, Prack, and Martuscello. Dkt. No. 30, Defs.' Reply Mem. of Law. The Court finds that Defendants have not established that Plaintiff failed to exhaust his administrative remedies, and therefore, recommends that Defendants' Motion for Summary Judgment be **denied**. The Court recommends that Defendants' Motion to Dismiss Defendants Prack and Martuscello be **granted**, and Defendants' Motion to Dismiss Defendant Smith be **denied**.

## I. BACKGROUND

Plaintiff alleges that shortly after arriving at Upstate on September 15, 2017, he was interviewed by John Doe regarding his history of sexual abuse. Compl. at ¶ 21. When John Doe asked Plaintiff if he has a history of sexual abuse, Plaintiff replied "yes," but Plaintiff alleges that John Doe allegedly said "no" aloud and circled "no" on Plaintiff's 3278RC form, which is used to determine if an inmate is susceptible to being sexually abused while in prison. *Id.* Plaintiff alleges he was then walked back to his cell by Defendant Fleury, who told Plaintiff that he had the "perfect bunkie" for him and for Plaintiff "to not ask him for anything." *Id.* at ¶ 22. Plaintiff alleges that on September 18, 2017, Defendant Smith came to his cell door and that Plaintiff told Defendant Smith he feared for his life and safety because of the conduct of John Doe and Defendant Fleury.

---

[1] Defendants' Motion for Summary Judgment does not pertain to John Doe or Sullivan, as they have not yet been served or appeared. *See* Dkt. No. 24-9, Defs.' Mem. of Law, p. 3 n.1 & 2; Dkt. Nos. 14 & 19.

*Id.* at ¶ 24. Later that same day, Plaintiff wrote letters to Sullivan, and Defendants Smith, Prack, and Martuscello relaying that same concern. *Id.* at ¶ 25.

On or about September 25, 2017, Plaintiff received a bunkmate who allegedly threatened to physically assault him if Plaintiff did not give into his sexual demands. *Id.* at ¶ 26. When Plaintiff informed Defendant Bond that he feared he would be sexually assaulted by his bunkmate, Defendant Bond allegedly told Plaintiff "to work it out." *Id.* Later that day, Plaintiff was sexually assaulted by his bunkmate. *Id.* at ¶ 27. The next morning, Plaintiff allegedly placed letters addressed to Sullivan, and Defendants Smith, Prack, and Martuscello in the feed up slot of his cell door informing them he had been sexually assaulted. *Id.* at ¶ 28. Later that day, Plaintiff was again sexually assaulted by his bunkmate. *Id.* On or about September 27, 2017, Plaintiff was interviewed by John Doe regarding the sexual assaults and John Doe allegedly told Plaintiff that he "deserved what happened to him" and that he would be placed back in his cell with his bunkmate. *Id.* at ¶ 29.

Plaintiff asserts that he has exhausted his administrative remedies "to the best of his ability . . . to the highest level afforded [to] him." *Id.* at ¶ 41. Plaintiff commenced the grievance procedure when he filed a grievance with the grievance clerk at Upstate on October 1, 2017, alleging that he was sexually assaulted by his bunkmate on September 25 and 26, 2017, and that Defendants, knowing he was susceptible to sexual abuse and harassment, failed to protect him from the sexual assaults. *Id.* at ¶¶ 37-38; Dkt. No. 31-1 at pp. 1-4 & 6.

The next day, Plaintiff received notice from the Inmate Grievance Program ("IGP") Supervisor at Upstate that Plaintiff's Prison Rape Elimination Act ("PREA") claim was forwarded to the Watch Commander and "deemed exhausted upon filing for Prison Litigation Reform Act ('PLRA') purposes." Dkt. No. 31-1 at p. 6. The letter from the IGP Supervisor also stated that Plaintiff's allegations of employee harassment, retaliation, and threats would be investigated by the Superintendent. *Id.* On April 5, 2018, after the completion of an investigation by an IGP supervisor, the Superintendent denied Plaintiff's grievance, concluding there was no misconduct by staff. Dkt. No. 31-1 at p. 11.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard on Motion for Summary Judgment

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the

moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir.1994). Furthermore, where a party is proceeding *pro se*, the court must "read his supporting papers liberally, and [ ] interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord, Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. Whether Plaintiff Exhausted his Administrative Remedies

The PLRA provides, in part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). There is no question that exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 94 (2006).

Defendants here outline for the Court the familiar three step inmate grievance process within DOCCS, *see Smith v. Kelly*, 985 F. Supp. 2d 275, 280-81 (N.D.N.Y. 2013) (discussing the grievance process), provide evidence that Plaintiff did not fully comply with that procedure, and argue as a result that the Complaint should be dismissed for failure to exhaust. Defs.' Mem. of Law at pp. 7-11.

However, the sole allegation in this Complaint is that Defendants failed to protect Plaintiff from being sexually assaulted by another inmate, *see* Compl. at ¶ 34, and the exhaustion requirement for allegations concerning incidents of sexual assault is different than that for other types of complaints. *See Abreu v. Miller*, 2018 WL 5660409, at *4 (N.D.N.Y. Aug. 16, 2018), *report and recommendation adopted*, 2018 WL 4502007 (N.D.N.Y. Sept. 20, 2018), *order amended and superseded on reconsideration on other*

*grounds*, 2019 WL 761639 (N.D.N.Y. Feb. 21, 2019). One of the primary objectives of the PREA is to "increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape." 34 U.S.C. § 30302(6). As revised on May 15, 2014, DOCCS Directive 4040 provides:

> The department has zero tolerance for sexual abuse and sexual harassment. Consistent with this policy and the Prison Rape Elimination Act (PREA) Standards (28 C.F.R. § 115.52(a)), an inmate is not required to file a grievance concerning an alleged incident of sexual abuse or sexual harassment to satisfy the [PLRA] exhaustion requirement (42 U.S.C. § 1997e(a)) before bringing a lawsuit regarding an allegation of sexual abuse as long as the matter was reported as set forth below.

7 N.Y.C.R.R. § 701.3(i). For purposes of the PREA and the exhaustion requirement, any allegation concerning an incident of sexual abuse or harassment shall be deemed exhausted if official documentation confirms that:

> (1) an inmate who alleges being the victim of sexual abuse or sexual harassment reported the incident to facility staff; in writing to Central Office Staff; to any outside agency that the Department has identified as having agreed to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials under the PREA Standards (28 C.F.R. § 115.51(b)); or to the Department's Office of the Inspector General; or (2) a third party reported that an inmate is the victim of sexual abuse and the alleged victim confirmed the allegation upon investigation.

*Id.*

In addition, a grievance alleging sexual abuse or harassment may be submitted at any time. *Id.* If an inmate files a formal grievance alleging sexual abuse or harassment with the grievance clerk, it shall immediately be reported by the IGP supervisor to the watch commander, and that complaint "shall be deemed exhausted upon filing for PLRA purposes." *Id.*

There appears to be no question that Plaintiff alleged to prison officials that he was the victim of a sexual assault and that he received notice from the IGP Supervisor stating his PREA claim has been exhausted for PLRA purposes, and thus his report was documented as required. Dkt. 31-1 at p. 6. Pursuant to DOCCS Directive 4040 that was sufficient to deem his claims regarding the alleged sexual assault exhausted.[2] This was sufficient to exhaust his administrative remedies. *Medina v. Kaplan*, 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018).

The Defendants' Motion does not specifically address Directive 4040 and its application to this case. Defendants appear to simply assume that the Plaintiff's claim that the Corrections Officers failed to intervene to stop the abuse, or were otherwise responsible for the repeated sexual assault by Plaintiff's bunkmate, is not covered by the Directive. The Court does not adopt such a narrow view. Directive 4040 specifically refers to an "incident" of sexual abuse. That incident could include, not only the acts of sexual abuse by an inmate or a corrections officer, but also other events which are necessarily intertwined with such a claim, such as a physical assault during the course of the abuse; the failure of correctional staff to intervene to stop the rape; or acts or failures to act making a jail official legally accountable for the sexual abuse. *See Abreu v. Miller*, 2018 WL 4502007, at *2 ("[I]it may also be that the sexual assault was carried out by

---

[2] Plaintiff's grievance not only alleged that several prison employees failed to protect him from being sexually assaulted, but that Plaintiff was not allowed access to certain privileges and items. Dkt. No. 31-1 at pp. 1-4. Plaintiff asserts that his cell did not have a mattress or certain toiletries, he was not allowed his legal work or "religious articles," and was denied access to the law library, to state issued earphones, and had his food and clothes tampered with. *Id.* Defendants may be correct that those claims were not fully exhausted through the three step process, but the Court need not decide that question because those claims are not asserted as part of this litigation.

physically assaulting Plaintiff, perhaps to overcome his resistance to the sexual conduct."). Such a reading of the Directive is not only consistent with its language, but also comports with its purpose in attempting to prevent such conduct.

Further, while it is true that not all grievances by inmates are covered by the Directive, conduct that is specifically related to the act of sexual abuse, such as a failure to intervene and protect that abuse, could be reasonably interpreted by the inmate as being covered by the Directive. In such a circumstance it would be justifiable for the inmate to rely on the Directive, and the memorandum sent to him indicating that his PREA allegations had been deemed exhausted. Dkt. No. 31-1 at p. 6. As noted in a similar situation: "[a]n inmate would be placed in an untenable position if he were required to adjudicate whether his allegations of sexual assault were sufficient under PREA prior to relying upon the language in Directive 4040 alleviating the need to utilize the normal grievance procedure." *Henderson v. Annucci*, 2016 WL 3039687, at *5 (W.D.N.Y. Mar. 14, 2016), *report and recommendation adopted*, 2016 WL 3031353 (W.D.N.Y. May 27, 2016). Here, where Plaintiff was told his PREA claims were exhausted, this seems especially applicable.

As such, the Court recommends Defendants' Motion for Summary Judgment for failure to exhaust be denied.

### III. MOTION TO DISMISS

### A. Legal Standard for a Motion to Dismiss

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess

the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, n.6 (1963). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal citation omitted). In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI*

*Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

Where, as here, the complaint was filed *pro se*, it must be construed liberally with "special solicitude" and interpreted "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks omitted) (citation omitted). Nonetheless, a *pro se* complaint must state a "plausible claim for relief." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)).

**B. Personal Involvement**

In their Partial Motion to Dismiss, Defendants Smith, Prack, and Martuscello move to dismiss Plaintiff's claims against them on the ground that Plaintiff failed to allege personal involvement in the events giving rise to this action. Defs.' Mem. of Law at pp. 11-13.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991)). In order to prevail on a § 1983 claim, a plaintiff must show a "tangible connection" between the acts of a defendant and the injuries suffered by the plaintiff. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

*1. Defendants Prack and Martuscello*

Defendants assert that Defendant Prack, Director of Special Housing Units for DOCCS, and Defendant Martuscello, Deputy Commissioner for Administration for DOCCS, should be dismissed from this action for lack of personal involvement. Defs.' Mem. of Law at p. 11; Compl. at ¶¶ 3-4. Defendants assert that Plaintiff has not alleged any facts that Defendant Prack or Defendant Martuscello: (1) made the decision to place Plaintiff's bunkmate in his cell with him; (2) was informed who Plaintiff's bunkmate was; or (3) was aware of whether Plaintiff's bunkmate had a history of sexual violence. Defs.' Mem. of Law at p. 12. In Plaintiff's Memorandum of Law, he concedes that these two defendants are not personally involved and requests the Court strike them from this

action. Pl.'s Mem. of Law, at p. 9. Therefore, the Court recommends Defendants Prack and Martuscello be dismissed.

### *2. Defendant Smith*

Defendants assert that Defendant Smith lacked personal involvement in the alleged violations giving rise to this action. Defs.' Mem. of Law at pp. 11-13. Defendant Smith is an Offender Rehabilitation Counselor with DOCCS. Compl. at ¶ 12. Defendant Smith argues that she had no knowledge or personal involvement in Plaintiff's bunkmate being placed in his cell with him, specifically, that she did not: (1) make the decision to place Plaintiff's bunkmate in his cell with him; (2) know who Plaintiff's bunkmate was; or (3) receive any information regarding Plaintiff's bunkmate having a history of sexual violence. Defs.' Mem. of Law at p. 12.

Plaintiff contends that Defendant Smith is personally involved in this case because she failed to take action to protect him from being sexually assaulted by his bunkmate after Plaintiff told Defendant Smith at his cell, and later wrote to her, that he feared for his life and safety after John Doe and Defendant Fleury allegedly made remarks to Plaintiff about his bunkmate. Pl.'s Mem. of Law at p. 9. Additionally, Plaintiff asserts that it was evident Defendant Smith was aware of the sexual assaults because John Doe interviewed Plaintiff after Plaintiff spoke with Defendant Smith, and a call was placed to Plaintiff regarding his PREA claim. Compl. at ¶ 29; Dkt. No. 31-1 at p. 12.

In his Complaint, Plaintiff alleges that on September 18, 2017, Defendant Smith came to visit him at his cell for his initial interview after arriving at Upstate, and during this interview, Plaintiff told Defendant Smith that he feared for his life and safety as a

- 13 -

result of his encounters with John Doe and Defendant Fleury. Compl. at ¶ 24. Plaintiff alleges that later that day, he sent Defendant Smith a letter informing her of the same concerns he told Defendant Smith at his cell. *Id.* at ¶ 25. On September 26, 2017, after Plaintiff was sexually assaulted, he wrote to Defendant Smith again, placing the letter in the feed up slot of his cell door, informing Defendant Smith that he had been sexually assaulted by his bunkmate. *Id.* at ¶ 28.

Courts have denied defendants' motions to dismiss for lack of personal involvement when plaintiffs have alleged they met in person with defendants to discuss the events giving rise to their actions. *See Hayes v. Dahkle*, 2018 WL 7356343, at *2, 18-19 (N.D.N.Y. Dec. 11, 2018), *report and recommendation adopted*, 2019 WL 689234 (N.D.N.Y. Feb. 19, 2019) (plaintiff expressed his fear about his safety in person to a defendant supervisor); *see also Whitley v. Ort*, 2018 WL 4684144, at *7 (S.D.N.Y. Sept. 28, 2018) (nurse allegedly failed to provide plaintiff with medical treatment and take action under the PREA after plaintiff told nurse in person he had been sexually assaulted).

On a case-by-case basis, a plaintiff may be able to establish a defendant's personal involvement when a defendant receives a letter from the plaintiff detailing the factual allegations giving rise to their claim. The Second Circuit has concluded that a defendant's personal involvement can be established if,

> [a]t the pleading stage, even if [the plaintiff] had no knowledge or information as to what became of his [l]etter after he sent it, he would be entitled to have the court draw the reasonable inference–if his [] complaint contained factual allegations indicating that the [l]etter was sent to [a supervisor] at an appropriate address and by appropriate means–that the [defendant] in fact received the [l]etter, read it, and thereby became aware of the alleged conditions of which [the plaintiff] complained.

*Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013); *see Grubbs v. Grimaldi*, 2019 WL 720969, at *5 (N.D.N.Y. Jan. 23, 2019), *report and recommendation adopted*, 2019 WL 719383 (N.D.N.Y. Feb. 20, 2019) (plaintiff stating the multiple letters he wrote to the facility health services director were ignored and unanswered did not establish personal involvement); *see also Ferrer v. Fischer*, 2014 WL 1763383, at *3 (N.D.N.Y. May 1, 2014) (plaintiff's allegations that he sent multiple letters to a named defendant, that defendant was "fully aware" of his situation, and that defendant failed to respond to his letters and take appropriate action was sufficient to defeat defendant's motion to dismiss at the pleading stage); *but see Simpson v. Overbaugh*, 2015 WL 7444369, at *5 (N.D.N.Y. Sept. 28, 2015), *report and recommendation adopted*, 2015 WL 7444617 (N.D.N.Y. Nov. 23, 2015) (plaintiff did not provide sufficient information regarding the specific issues and individuals mentioned in the grievance).

At this stage in the case, Plaintiff has alleged enough facts to show it is plausible that Defendant Smith was personally involved in the events giving rise to this action. Plaintiff states that he expressed his concerns about his safety to Defendant Smith in person. *See Hayes v. Dahkle*, 2018 WL 7356343, at *2; Compl. at ¶ 24. Also, the letters Plaintiff allegedly sent to Defendant Smith raised specific concerns due to particular correction officers' actions and how Plaintiff was sexually assaulted by his bunkmate. *See Ferrer v. Fischer*, 2014 WL 1763383, at *3; Compl. at ¶¶ 24-25 & 28. Plaintiff also provided the specific dates the letters were sent and the means by which the second letter was sent. *Id.*

Plaintiff has also alleged enough facts to show the alleged violations were ongoing. Plaintiff has provided enough evidence that establishes that the alleged violations were not remedied after Defendant Smith was allegedly first made aware of Plaintiff's concerns, and therefore, Defendant Smith may have been able to remedy Plaintiff's damages and mitigate the alleged violations. *See Burton v. Lynch*, 664 F. Supp. 2d 349, 360 (S.D.N.Y. 2009); *see also Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989); Compl. at ¶¶ 24-25 & 28.

Therefore, it is recommended that the Court deny Defendants' motion to dismiss for lack of personal involvement with respect to Plaintiff's claims against Defendant Smith.

## IV. REMAINING PARTIES

The Court notes that there remains a John Doe Defendant in this action. Defendants have identified this individual in response to an order by Judge Kahn. *See* Dkt. Nos. 8 & 12. The Court recommends that Plaintiff be ordered to indicate whether he intends to go forward with a claim against the individual identified by Defendants, Sgt. Walantus, and for him to be added as a Defendant to this action.

The Court also notes that Francis Sullivan has not been served as she is no longer employed by DOCCS. *See* Dkt. No. 19. The Court therefore recommends Defendants be ordered to attempt to ascertain a current address where Ms. Sullivan can be served. *See Valentin v. Dinkins*, 121 F.3d 72, 75-76 (2d. Cir. 1997); *see also Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 789 (7th Cir. 1995).

## V. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment based upon Plaintiff's failure to exhaust his administrative remedies be **DENIED**; and it is further

**RECOMMENDED**, that Defendants' Partial Motion to Dismiss Defendants Prack and Martuscello be **GRANTED**; and it is further

**RECOMMENDED**, that Defendants' Partial Motion to Dismiss Defendant Smith for lack of personal involvement be **DENIED**; and it is further

**RECOMMENDED**, that Plaintiff be ordered to indicate whether he intends to go forward with a claim against the individual identified by Defendants as John Doe; and it is further

**RECOMMENDED**, that an order pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997) be issued regarding Defendant Sullivan; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

---

[3] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: August 19, 2019
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge