UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JOSHUA SHEFFER,

                Plaintiff,

     -against-                   9:18-CV-1180 (LEK/DJS)

CORRECTION OFFICER FLEURY, *et al.*,

                Defendants.

_____

### DECISION AND ORDER

## I.     INTRODUCTION

Pro se plaintiff Joshua Sheffer brought this action under 42 U.S.C. § 1983 alleging, inter alia, that officials at New York's Upstate Correctional Facility ("Upstate") violated his Eighth Amendment rights when they failed to protect him from a series of sexual assaults by his bunkmate in September 2017. Dkt. No. 1 ("Complaint"). After a sufficiency review by the Court pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Plaintiff's failure-to-protect claims proceeded against the following defendants: Correction Officer Travis Bond ("Bond"), Correction Sergeant John Doe ("Doe"),[1] Correction Officer Nicholas Fleury ("Fleury"), New York State Department of Corrections and Community Supervision ("DOCCS") Deputy Commissioner for Administration Daniel Martuscello, III ("Martuscello"), DOCCS Director of Special Housing Units Albert Prack ("Prack"), Offender Rehabilitation Counselor Luann Smith ("Smith"), and DOCCS Policy and Complaint Review Chairperson Frances Sullivan

---

[1] Doe was subsequently identified as Correction Sergeant Michael Walantus. Dkt. No. 14.

("Sullivan").[2] Dkt. No. 8 ("November 2018 Decision and Order"). In the same order, the Court

dismissed Plaintiff's failure-to-protect claims against DOCCS, Correction Officer Chase, and

acting Upstate Superintendent Donald Uhler, and dismissed Plaintiff's sexual harassment claims

brought against only two defendants, Doe and Correction Officer Labarge. Nov. 2018 Decision

and Order. Bond, Fleury, Martuscello, Prack, and Smith then moved for summary judgment

under Federal Rule of Civil Procedure 56(a), arguing that Plaintiff had failed to exhaust his

administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §

1997e. See Defs.' Mem. at 9; Dkt. No. 30 ("Defendants' Reply") at 9–10. In the alternative,

Defendants requested an opportunity to depose Plaintiff on the limited issue of exhaustion

followed by an evidentiary hearing pursuant to Messa v. Goord, 652 F.3d 305 (2d Cir. 2011), and

Martuscello, Prack, and Smith moved to dismiss under Federal Rule of Civil Procedure 12(b)(6)

for lack of personal involvement. Defs.' Mem. at 9. Plaintiff does not oppose the motion to

dismiss by Prack and Martuscello, but opposes the remainder of the motions. Dkt. No. 31-3

("Plaintiff's Response") at 10. The Honorable Daniel J. Stewart, United States Magistrate Judge,

issued a Report-Recommendation and Order in response to Defendants' motions, Dkt. No. 39

("Report-Recommendation"), to which Defendants timely objected, Dkt. No. 40 ("Objections").

For the following reasons, the Court approves and adopts the Report-Recommendation in its

entirety.

---

[2]  Doe and Sullivan have not yet been served or appeared in this action, see Dkt. No. 24-9
("Defendants' Memorandum") at 3, n.1, n.2; Dkt. No. 14; Dkt. No. 19, and take no part in the
motions that are the subject of this Decision and Order. Therefore, when the Court writes
generally of "Defendants" in this Decision and Order, it refers to Bond, Fleury, Martuscello,
Prack, and Smith. When discussing an individual defendant's motion, the Court refers to the
defendant by name.

## II.    BACKGROUND

The facts and allegations in this case were detailed in the November 2018 Decision and Order and the Report-Recommendation. <u>See</u> Nov. 2018 Decision and Order at 3–6; R. & R. at 2–4. Familiarity is assumed.

### A.    Magistrate Judge Stewart's Report-Recommendation

Magistrate Judge Stewart recommended: (1) denying Defendant's Motion for Summary Judgment because Plaintiff had exhausted his administrative remedies under the Prison Rape Elimiation Act ("PREA"), 34 U.S.C. § 30301, et seq., and DOCCS Directive 4040 § 701.3(i), which establishes the exhaustion requirements for inmate complaints of sexual abuse or harassment; (2) denying Smith's Motion to Dismiss because Plaintiff had pled sufficient facts to demonstrate Smith's personal involvement in the alleged Eighth Amendment violation; and (3) granting the Motion to Dismiss by Prack and Martuscello, which Plaintiff did not oppose. R. & R. at 17. Magistrate Judge Stewart did not address Defendants' request to depose Plaintiff nor their request for a <u>Messa</u> hearing. <u>Id.</u>

### B.    Defendants' Objections to the Report-Recommendation

With regard to their Motion for Summary Judgment, the Court reads Defendants' Objections to argue that Plaintiff has failed to exhaust his administrative remedies because the exhaustion procedure for incidents of sexual assault found in § 701.3(i) does not apply to Plaintiff's claims. Objs. at 2–5. Specifically, Defendants object that § 701.3(i) does not apply to Plaintiff's failure-to-protect claim because the claim is not "necessarily intertwined" with the underlying sexual assault allegation, as Magistrate Judge Stewart held it was. <u>Id.</u> at 4. Additionally, Defendants take issue with a factual finding by Magistrate Judge Stewart that

Plaintiff told Bond on September 25, 2017 that he feared he would be "sexually assaulted" by his bunkmate. Id. at 2 (citing R. &. R. at 3). They argue that Plaintiff failed to produce evidence proving that he told any defendant at any time about his fears of sexual assault. Objs. at 3.

As for the Motion to Dismiss, Smith objects generally that Plaintiff pled insufficient facts to plausibly show that Smith was personally involved in the events underlying this dispute. Id. at 5. More specifically, Smith argues that Plaintiff never alleged that he told her he was afraid of being sexually assaulted by his bunkmate, and she questions Magistrate Judge Stewart's "reliance" on two letters Plaintiff alleges he sent to Smith regarding his fears. Id. at 5–6. Thus, Smith argues, Plaintiff has not plausibly alleged that Smith was personally involved in the alleged failure to protect Plaintiff from his bunkmate.

## III.    STANDARD OF REVIEW

### A.    Review of Report-Recommendation

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at *1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07 (N.D.N.Y. 2008), abrogated on other grounds, Widomski v. State Univ. of N.Y.

at Orange, 748 F.3d 471 (2d Cir. 2014); see also Machicote v. Ercole, No. 06-CV-13320, 2011 WL 3809920, at *2 (S.D.N.Y. Aug. 25, 2011) ("[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ."). "A [district] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

### B. Legal Standard for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any," that there is no genuine issue of material fact. F.D.I.C. v. Giammettei, 34 F.3d 51, 54 (2d Cir. 1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. Fed. R. Civ. P. 56(c); see also Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525–26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . [sworn statements] are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion," and the credibility of such statements is better left to a trier of fact. Scott, 344 F.3d at 289 (citations omitted).

"[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994). When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). Furthermore, where a party is proceeding pro se, the court must "read his supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); accord Soto v. Walker, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### C.     Legal Standard for Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In assessing whether this standard has been met, courts "must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party[] . . . ." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007)

(internal citation omitted). Where, as here, the complaint was filed pro se, it must be construed

liberally with "special solicitude" and interpreted "to raise the strongest claims that it suggests."

Hill v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (internal quotation marks and citation

omitted). Nonetheless, a pro se complaint must state a "plausible claim for relief." See Harris v.

Mills, 572 F.3d 66, 72 (2d Cir. 2009).

## IV.    ANALYSIS

As an initial matter, and before turning to the balance of the Report-Recommendation, the

Court notes that Plaintiff has not opposed the motion to dismiss by Martuscello and Prack. Pl's.

Resp. at 9. The Court finds no clear error in Magistrate Judge Stewart's recommendation that the

claims against Martuscello and Prack be dismissed, R. & R. at 12–13, and adopts the

recommendation.

Turning to Defendants' Motion for Summary Judgment and Smith's Motion to Dismiss,

after reviewing the papers and the Report-Recommendation, the Court finds no clear error in the

unobjected-to portions of the Report-Recommendation. And, after reviewing de novo the

portions of the Report-Recommendation to which Defendants object, the Court finds no error.

Magistrate Judge Stewart employed the proper legal standards, accurately recited the facts

alleged, and correctly applied the law to those facts. As a result, the Court accepts and adopts the

Report-Recommendation for the reasons stated therein. The Court adds the following discussion.

### A.    Denial of Defendants' Motion for Summary Judgment

Defendants moved for summary judgment on the grounds that Plaintiff failed to exhaust

his administrative remedies through the DOCCS Inmate Grievance Program ("IGP"), as was

required under the PLRA. Defs.' Mem. at 7–11; Defs.' Reply at 4–8. The PLRA provides that

"[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory, Ross v. Blake, 136 S. Ct. 1850, 1856 (2016), and must be "proper," which means using all steps of the agency's administrative process and complying with "deadlines and other critical procedural rules," Woodford v. Ngo, 548 U.S. 81, 94 (2006).

To satisfy the PLRA's exhaustion requirement, an inmate-plaintiff in DOCCS' custody must typically follow the IGP's three-step process, which involves filing an initial grievance with the IGP clerk at the prison where the inmate is incarcerated and, in the case of an adverse ruling, two subsequent levels of appeals. See DOCCS Directive 4040 § 701.5; N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5; Carleton v. Annucci, No. 17-CV-245, 2018 WL 7917921, at *5–6 (N.D.N.Y. Nov. 21, 2018), report and recommendation adopted, 2019 WL 422530 (N.D.N.Y. Feb. 4, 2019) (describing three-step process in detail). Generally, a plaintiff must properly appeal through all three levels of review before seeking relief in a federal court under § 1983. See Ruggiero v. Cnty. of Orange, 467 F.3d 170, 176 (2d Cir. 2006).

However, for complaints regarding sexual abuse or harassment, DOCCS has established a different procedure. See DOCCS Directive 4040 § 701.3(i); N.Y. Comp. Codes R. & Regs. tit. 7, § 701.3(i). Revised in 2014 pursuant to the Prison Rape Elimination Act ("PREA"), see Henderson v. Annucci, No. 14-CV-445A, 2016 WL 3039687, at *3 (W.D.N.Y. Mar. 14, 2016), Directive 4040 § 701.3(i) creates a relaxed exhaustion requirement for allegations concerning incidents of sexual assault. Specifically, "an inmate is not required to file a grievance concerning

an alleged incident of sexual abuse or sexual harassment to satisfy the [PLRA] exhaustion requirement." Directive 4040 § 701.3(i) (citations omitted). Instead,

> [A]ny allegation concerning an incident of sexual abuse or sexual harassment shall be deemed exhausted if official documentation confirms that: an inmate who alleges being the victim of sexual abuse or sexual harassment reported the incident to facility staff; in writing to Central Office Staff; to any outside agency that the Department has identified as having agreed to receive and immediately forward inmate reports of sexual abuse and sexual harassment to agency officials under the PREA Standards; or to the Department's Office of the Inspector General.

Id. (citations omitted). If an inmate does file a grievance regarding a complaint of sexual abuse or sexual harassment, "[t]he complaint shall be deemed exhausted upon filing." Id. Finally, "[a] sexual abuse or sexual harassment complaint may be submitted at any time." Id.

Magistrate Judge Stewart found that Plaintiff had properly exhausted his remedies under the relaxed procedures found in § 701.3(i). The Magistrate Judge held that an "incident" of sexual abuse under § 701.3(i) could include "not only the acts of sexual abuse by an inmate or a corrections officer, but also other events which are necessarily intertwined with such a claim, such as a physical assault during the course of the abuse; the failure of correctional staff to intervene to stop the rape; or acts or failures to act making a jail official legally accountable for the sexual abuse." R. & R. at 8–9 (citing Abreu v. Miller, 2018 WL 5660409, at *4 (N.D.N.Y. Aug. 16, 2018), report and recommendation adopted, 2018 WL 4502007 (N.D.N.Y. Sept. 20, 2018), order amended and superseded on reconsideration on other grounds, 2019 WL 761639 (N.D.N.Y. Feb. 21, 2019) (finding that allegations that an inmate was a victim of a "non-sexual physical assault" could be subject to § 701.3(i)'s relaxed exhaustion requirement where, at the summary judgment stage, it was not clear "that the physical assault was discrete from the sexual

assault"). Because Plaintiff grieved that DOCCS employees failed to protect him from sexual abuse by his bunkmate, Magistrate Judge Stewart held that Plaintiff's failure-to-protect claim was necessarily intertwined with the underlying sexual assault and, thus, subject to § 701.3(i)'s relaxed exhaustion requirement. R. & R. at 8–9. And because "[t]here appears to be no question that Plaintiff alleged to prison officials that he was the victim of a sexual assault . . .[Plaintiff's] report was [thus] documented as required" and "was sufficient to exhaust his administrative remedies." R. & R. at 8 (citing Medina v. Kaplan, 2018 WL 797330, at *5 (S.D.N.Y. Feb. 8, 2018)). On this basis, the Magistrate Judge recommended denying Defendants' Motion for Summary Judgment. R. & R. at 9.

Defendants appear to raise two objections to this recommendation. First, they dispute Magistrate Judge Stewart's determination that Plaintiff's failure-to-protect allegations against Defendants are necessarily intertwined with the sexual assault committed by Plaintiff's bunkmate. Second, they object to the Magistrate Judge's factual finding that Plaintiff informed DOCCS employees that he was in fear of sexual assault.[3] The Court addresses these objections in turn.

1.  *Plaintiff's Failure-to-Protect Claim Is Necessarily Intertwined with His Claim that His Bunkmate Sexually Assaulted Him*

The crux of Defendants' objection is that "plaintiff['s] alleg[ations] that defendants failed to protect him from being sexually assaulted by another inmate" are "not necessarily intertwined

---

[3] The Court has reversed the order of Defendants' objections for analytical clarity.

with the alleged sexual assault or harassment committed by Plaintiff's bunkmate." Objs. at 4.

The Court disagrees.[4]

As an initial matter, Defendants did not object to Magistrate Judge Stewart's interpretation that claims "necessarily intertwined" with an underlying sexually abusive act fall under § 701.3(i)'s relaxed exhaustion requirements. Objs. at 4 ("[D]efendants assume, for the purposes of this motion, that allegations that are 'necessarily intertwined' with sexual assault or sexual harassment are encompassed within [the § 701.3(i)] exception of the exhaustion requirement."). As such, the Court reviews this determination only for clear error, and it finds none.[5]

_____

[4] Defendants' objection on this point is not a model of clarity. For example, Defendants state that "[w]hile the alleged underlying assault on plaintiff by his bunkmate was sexual in nature, the defendants object because the nature of the assault, in this circumstance, is not subject to the sexual abuse provisions of Directive 4040." Objs. at 4. It is unclear to the Court how "the nature of the assault" perpetrated by Plaintiff's bunkmate—an assault that Defendants do not dispute involved coerced sexual acts—could *not* be subject to "the sexual abuse provisions of Directive 4040." Additionally, Defendants argue that "plaintiff was required to utilize the three-step grievance procedure with respect to his claims of harassment and threats against defendants," Objs. at 4, without explaining which "claims of harassment and threats" they mean. It is possible to read the objection to refer to Plaintiff's claims in his grievance that, inter alia, Correction Officer Chase stated "he will get [Plaintiff], one way or the other," Compl. ¶ 23, or that certain correction officers tampered with Plaintiff's clothes and food and prevented him from accessing his "legal work," "religious articles," and the law library, see generally Dkt. No. 24-4 at 1–2, Dkt. No. 31-1 at 1 (together, the "October 1 Grievance"), claims that either were never at issue in or have already been dismissed from this case, see generally Compl.; Nov. 2018 Decision and Order. Or, the objection could refer specifically to allegations, such as Fleury's threat to lodge Plaintiff with the "perfect bunkie," Compl. ¶ 22; Oct. 1 Grievance at 1, that are directly relevant to the failure-to-protect claim at issue. Despite this lack of clarity, the Court has construed Defendant's objections as generously as possible, and it still finds them wanting.

[5] The Court notes that case law interpreting the 2014 revisions to Directive 4040 is limited. See Abreu, 2018 WL 5660409, at *2; Fox v. Lee, No. 15-CV-390, 2018 WL 8576600, at *10 (N.D.N.Y. Dec. 18, 2018), report and recommendation adopted, 2019 WL 1323845 (N.D.N.Y. Mar. 25, 2019); Lewis v. Martinez, No. 15-CV-55, 2018 WL 7917916, at *7 (N.D.N.Y. Nov. 9, 2018), report and recommendation adopted, 2019 WL 642678 (N.D.N.Y. Feb. 15, 2019), reconsideration denied, 2019 WL 2105562 (N.D.N.Y. May 14, 2019); Allen v.

Turning to Defendants' objection, to the extent the objection is a general one—that a "failure-to-protect" claim can never be necessarily intertwined with an underlying sexual assault—such an interpretation does not comport with the language of § 701.3(i). When explaining which allegations are subject to § 701.3(i)'s special exhaustion requirements, the section cites to Directive 4027A, "Sexual Abuse *Prevention* & Intervention – Inmate-on-Inmate" and Directive 4028A, "Sexual Abuse *Prevention* & Intervention – Staff-on-Inmate." Directive 4040 § 701.3(i) (emphasis added). In turn, Directive 4027A "provides information concerning . . . the prevention of . . . allegations of inmate-on-inmate sexual abuse . . ." and states that, "[all] allegations of sexual abuse, sexual harassment, or retaliation against . . . an inmate . . . will be thoroughly investigated." Directive 4027A. This suggests that § 701.3(i) was intended to cover allegations that DOCCS employees failed to prevent inmate-on-inmate sexual abuse, exactly the issue raised in this case. Moreover, the Court agrees with Magistrate Judge Stewart that reading § 701.3(i) to encompass failure-to-protect claims "is not only consistent with its language, but also comports with its purpose in attempting to prevent [sexual assault]." R. & R. at 9.

Defendants also object specifically that Plaintiff's "allegations against the defendants in this case are not necessarily intertwined" with the underlying sexual assault. Objs. at 4. In making this objection, Defendants rely on a letter Plaintiff received from the IGP supervisor at Upstate, "advising [Plaintiff] that the PREA portions of his complaint were deemed exhausted and the additional allegations of harassment, retaliation, and threats by staff" were under

Graham, No. 16-CV-47, 2017 WL 9511168, at *6–7 (N.D.N.Y. Sept. 26, 2017), report and recommendation adopted, 2017 WL 5957742 (N.D.N.Y. Dec. 1, 2017); McCray v. City of Albany, No. 13-CV-949, 2017 WL 1433336, at *2 (W.D.N.Y. Apr. 24, 2017); Henderson, 2016 WL 3039687, at *3–4; Medina, 2018 WL 797330, at *5. A review of this case law reveals no rulings contrary to Magistrate Judge Stewart's interpretation.

investigation. Id. (citing Dkt. No. 29-1 (the "IGP Letter") at 6). Defendants claim that there "is no ambiguity" that the "PREA portions" of Plaintiff's complaint referenced in the letter included only "his complaint that he was assaulted by his cellmate on three occasions." Objs. at 4. Defendants thereby suggest that Plaintiff's failure-to-protect claim falls within the "additional allegations of harassment, retaliation, and threats by staff" referenced in the IGP Letter and imply that such treatment by the IGP supervisor is dispositive. Id. ("[T]he portions of [Plaintiff's] grievance subject to the PLRA's exhaustion requirements – his complaints of harassment and threats against the defendants – were forwarded to the Superintendent [in accordance with DOCCS' standard appeals procedure] . . . thus, it is respectfully submitted that plaintiff was required to utilize the three-step grievance procedure with respect to his claims of harassment and threats against defendants.").

Assuming, *arguendo*, DOCCS' treatment of an inmate grievance were binding upon this Court, this argument fails on its own terms. The portions of the record Defendants cite to support their claim that there is "no ambiguity about which part [of Plaintiff's] grievance was deemed exhausted" are far from unambiguous. See IGP Letter (stating without further explanation that "your PREA allegations will be deemed exhausted upon filing . . . ."); see generally Oct. 1 Grievance (describing in detail Plaintiff's experience at Upstate and listing grounds for complaint, including, inter alia, that correction officers tampered with Plaintiff's clothes, failed to provide him with a mattress and necessary toiletries when he first arrived at Upstate, prevented him from accessing his "legal work," "religious articles," and the law library, and that Correction Officer Chase threatened to "make [Plaintiff's] breakfast tray special and Defendant Fleury

threatened to lodge Plaintiff with the "perfect bunkie").[6] Given the litany of allegations contained in Plaintiff's grievance, Magistrate Judge Stewart correctly noted that Plaintiff could "reasonably interpret" the "PREA allegations" referenced in the IGP Letter to encompass his failure-to-protect claim, and the "additional allegations of harassment, retaliation, and threats" to refer to his claims about the correction officers tampering with his food, clothes, and possessions. See R. & R. at 9. The IGP Letter was ambiguous enough that "it would be justifiable for [Plaintiff] to rely" on the IGP Letter's statement "that his PREA allegations had been deemed exhausted." Id.

For these reasons, the Court agrees with Magistrate Judge Stewart's holding that Plaintiff's failure-to-protect claim is necessarily intertwined with his underlying allegation of sexual assault by his bunkmate, that § 701.3(i) therefore encompasses Plaintiff's failure-to-protect claim, and that Plaintiff successfully exhausted this claim pursuant to the § 701.3(i) procedure when he filed a grievance with DOCCS officials.

2. *The Factual Finding that Plaintiff Told Bond About His Fear of "Sexual Assault"*

In describing the facts of this case, Magistrate Judge Stewart wrote that "Plaintiff informed Bond that he feared he would be sexually assaulted." R. & R. at 3. Defendants object to this statement, arguing that "there is nothing in the record to suggest that plaintiff complained to any . . . defendant[] at any time that he was in fear of being sexually abused." Objs. at 2. In doing so, Defendants urge the Court to read Plaintiff's Complaint narrowly. The Court declines.

---

[6] Because Defendants submitted an incomplete copy of Plaintiff's grievance in support of their Motion for Summary Judgment, the October 1 Grievance is found in two places in the record: Docket Number 24-4 at pages one to two and Docket Number 31-1 at page one. For purposes of clarity in pagination, this Decision and Order treats Docket Number 24-4 as pages one and two, and Docket Number 31-1 as page three.

As an initial matter, while Defendants' objection on this point is certainly relevant to the merits of Plaintiff's failure-to-protect claim,[7] it is less obviously relevant to the question of exhaustion. Under § 701.3(i)'s relaxed exhaustion procedure, which the Court has already determined governs Plaintiff's claim, filing an official grievance ex post regarding a failure-to-protect from sexual assault is sufficient to exhaust administrative remedies. See 701.3(i) ("Any inmate grievance filed regarding a complaint of sexual abuse or sexual harassment shall . . . be deemed exhausted upon filing for PLRA purposes."). Here, there is no dispute that Plaintiff filed such a grievance, explicitly naming Fleury and Smith. Defs.' Mem. at 5 ("[P]laintiff filed a grievance with the Upstate grievance office against defendants C.O. Fleury and Smith relating to his failure to protect claims."); Dkt. No. 24-2 ("Declaration of Donna Wilcox in Support of Defendant's Motion for Summary Judgment") ¶ 14 (same). And while the grievance does not name Bond, see Oct. 1 Grievance at 2 ("On Septmber 25, 2017 . . . I told the C.O. that walked by that I can't live [with my bunkmate] . . . ."); cf. Compl ¶ 26 ("On or about September 25, 2017 . . . Plaintiff told defendant Bond . . . that he cannot live in this cell . . . ."), it was not required to, see Shepherd v. Lempke, No. 10-CV-1524, 2016 WL 8732639, at *6 (N.D.N.Y. Oct. 28, 2016), report and recommendation adopted in part, rejected in part, 2017 WL 1187859 (N.D.N.Y. Mar. 30, 2017) ("[I]nmate-plaintiffs need not identify each and every defendant implicated in a civil rights lawsuit in grievances that predate the lawsuit.") (citing Jones v. Bock, 549 U.S. 199, 217 (2007)). Therefore, by filing this grievance, Plaintiff properly exhausted his

_____

[7] See Green v. Leubner, No. 07-CV-1035, 2009 WL 3064749, at *6 (N.D.N.Y. Sept. 22, 2009) (Kahn, J.) (describing how a failure-to-protect claim requires a prison official to have "sufficient culpable intent," which occurs when the official has "knowledge that an inmate faces a risk of serious harm and . . . disregards that risk by failing to take reasonable measures to abate the harm").

remedies under § 701.3(i). Since Defendants have moved for summary judgment solely on the basis of a failure to exhaust remedies, Defs.' Mem. at 3; Defs.' Reply at 1, other issues not germane to exhaustion are not before the Court at this time.

Yet, entertaining this objection, the Court sees no error in the recitation of the facts found in the Report-Recommendation. Magistrate Judge Stewart found, and the record demonstrates, that Plaintiff attempted to express his fears to DOCCS employees on at least four occasions. See R. & R. at 2–3. On September 18, 2017, Plaintiff told Smith "I fear for my safety and . . . I am being harassed by the staff." Oct. 1 Grievance at 1–2; see also Dkt. No. 31-1 at 2–4 ("Amended Grievance") ("[I] told [Defendant Smith] that I fear for my life and safety."). Later that day, Plaintiff mailed letters to Martuscello, Prack, Smith, and Sullivan expressing the same concerns. Compl. ¶ 25. Then, on September 25, 2017, after Plaintiff received his new bunkmate, he told Bond that he "can't live" with his new bunkmate, Oct. 1 Grievance at 2; Am. Grievance at 3, and that he feared being "assaulted." Compl. ¶ 26. That same day, Plaintiff was sexually assaulted by his bunkmate, Compl. ¶ 27; Oct. 1 Grievance at 1–2; Am. Grievance at 3, after which he placed letters to Martuscello, Prack, and Smith in the feed up slot to his cell door informing them of the assault, Compl. ¶ 28.

Defendants bear the burden of proving a failure to exhaust. See Grant v. Kopp, No. 17-CV-1224, 2019 WL 368378, at *4 (N.D.N.Y. Jan. 3, 2019), report and recommendation adopted, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019) ("[T]he failure to exhaust administrative remedies is an affirmative defense and . . . the party asserting failure to exhaust . . . typically bears the ultimate burden of proving its essential elements.") (citing Jones, 549 U.S. at 216). However, they have submitted no evidence contradicting Plaintiff's allegations. See generally

Defs.' Mem.; Defs.' Reply. Instead, they point out that nowhere in his grievance letters or in his Complaint does Plaintiff use the precise words "sexual assault" when he describes his communications with the guards at Upstate, or with any other DOCCS official. Objs. at 2–3. Thus, Defendants argue, "plaintiff did not complain to Bond that he was in fear of being sexually assaulted rather than merely assaulted," nor did he "advise[] any defendant that he was in fear of being sexually assaulted by his bunkmate." Objs. at 3. The Court declines to read Plaintiff's evidence so narrowly.

While the Court acknowledges that Plaintiff's pleadings and the available record evidence do not conclusively indicate that Plaintiff voiced an explicit fear of *sexual* assault to any defendant, at this stage of the litigation, it is reasonable to infer that Plaintiff did. Defendants do not dispute that Plaintiff told Bond he feared being "assaulted" by his bunkmate. Objs. at 3; see also Compl. ¶ 26. Additionally, the record indicates that, throughout this period, Plaintiff was concerned about his risk of sexual abuse and harassment because of "several of [Plaintiff's] personal characteristics," Defs.' Mem. at 4 (citing Compl. ¶¶ 34, 36), including his sexual orientation and his previous sexual victimization, Oct. 1 Grievance at 2; Am. Grievance at 2–3. It also appears that Plaintiff was concerned about sexual violence when he reported to Smith on September 18, 2017 how Doe had misrepresented Plaintiff's history of sexual victimization on Plaintiff's 3278RC form, which is used to determine if an inmate is susceptible to being sexually abused while in prison. Compl. ¶ 24; Oct. 1 Grievance at 1–2.

Given these contextual factors, and in light of the liberal reading afforded to a pro se litigant's papers, Burgos, 14 F.3d at 790, the Court finds it reasonable to infer that when Plaintiff told Bond he feared "assault" and Smith he feared for his safety, these conversations

encompassed Plaintiff's fear of sexual assault. See also Hailey v. N.Y. City Transit Auth., 136 F. App'x. 406, 407–08 (2d Cir. 2005) ("The rule favoring liberal construction of pro se submissions is especially applicable to civil rights claims."). The legal definition of "assault" is capacious, see Assault, Black's Law Dictionary (11th ed. 2019) (listing definitions and noting that "assault" is popularly defined as "any attack"), and encompasses Plaintiff's sexual assault by his bunkmate. It would be unreasonable to expect a non-lawyer, pro se litigant to appreciate the legal niceties that distinguish the different forms of assault. For these reasons, and "[r]esolv[ing] all ambiguities and draw[ing] all reasonable inferences in favor of the non-movant," as the Court must do on a motion for summary judgment, Berhanu v. New York State Ins. Fund., 13 F. App'x 30, 31 (2d Cir. 2001), it is reasonable to infer that Plaintiff related his fear of sexual assault to DOCCS employees. Therefore, the Court adopts Magistrate Judge Stewart's factual findings in their entirety.

**B.** **Denial of Smith's Motion to Dismiss**

In recommending that the Court deny Smith's motion to dismiss, Magistrate Judge Stewart concluded that Plaintiff had pled sufficient facts to plausibly show that Smith was "personally involved" in the failure to protect Plaintiff from sexual assault by his bunkmate. R. & R. at 15–16. Smith objects to this conclusion.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). An official may implicate her or himself in "constitutional wrongdoing if [she or] he . . . 'exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring' or

would occur." Tubbs v. Venettozzi, No. 19-CV-126, 2019 WL 2610942, at *3 (N.D.N.Y. June 26, 2019) (Kahn, J.) (quoting Vincent v. Yelich, 718 F.3d 157, 173 (2d Cir. 2013)); see also Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006) (deliberate indifference "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result."). Moreover, the § 1983 plaintiff must show a "tangible connection" between the acts of the defendant and the plaintiff's injuries. Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). By contrast, a mere "linkage" to the unlawful conduct through "the prison chain of command" is insufficient to show a defendant official's personal involvement in that unlawful conduct. Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003).

Smith argues that Plaintiff never alleged that he told her he was afraid of being sexually assaulted by his bunkmate, either in their September 18, 2017 conversation or in the letter Plaintiff sent to Smith later that day. Smith appears to suggest that if she did not know Plaintiff was at risk or in fear of sexual assault, she could not be personally involved in failing to protect him. See Green, 2009 WL 3064749, at *6 (quotations omitted) ("In the failure-to-protect context, a prison official . . . has sufficient culpable intent if [s]he has knowledge that an inmate faces a risk of serious harm and [s]he disregards that risk by failing to take reasonable measures to abate the harm."). Yet as described above, and in light of the liberal pleading requirements due pro se litigants, see Hill, 657 F.3d at 122, Plaintiff has pled sufficient facts to support the reasonable inference that when he told—and wrote to—Smith that he was in "fear[] for his life and safety, because of the threats made by defendant[] Fleury," Compl. ¶ 24, that fear encompassed sexual assault.

Further, Smith argues that Plaintiff has alleged no facts indicating that she failed to respond to a second letter Plaintiff allegedly sent her the day he was sexually assaulted by his bunkmate. Objs. at 5. She points out that the day after Plaintiff wrote this letter, he was placed in a new cell without a bunkmate. Id. at 5–6 (citing Compl. ¶ 30). Though Smith does not spell out the implication of this point, the Court reads it to suggest that she might have stepped in to protect Plaintiff from his bunkmate and that, therefore, Magistrate Judge Stewart's "reliance" on the letter was misplaced. Objs. at 5–6. However, the Court does not read the Report-Recommendation as relying unduly on this or any other letter. Instead, Magistrate Judge Stewart considered the letters in conjunction with the conversation Plaintiff had with Smith on September 18 and gave the letters their appropriate weight. R. & R. at 13–16. And while it is possible the Complaint could be read to suggest that, after receiving the second letter, Smith stepped in to arrange Plaintiff's transfer to a new bunk, such a reading would be inappropriate on a motion to dismiss. See NYSE Specialists Sec. Litig., 503 F.3d at 95 (on a motion to dismiss, the Court must "draw all inferences in the light most favorable to the non-moving party . . . ."). Nor would it address the earlier letter or conversation, which alone are adequate to support Magistrate Judge Stewart's recommendation. See, e.g., Ferrer v. Fischer, No. 13-CV-31, 2014 WL 1763383, at *3 (N.D.N.Y. May 1, 2014) (plaintiff's allegations that he sent multiple letters to a named defendant, the defendant was "fully aware" of his situation, and the defendant failed to respond to the letters or take appropriate action was sufficient to defeat defendant's motion to dismiss); Whitley v. Ort, 2018 WL 4684144, at *7 (S.D.N.Y. Sept. 28, 2018) (nurse allegedly failed to provide plaintiff with medical treatment and take action under the PREA after plaintiff told nurse in person he had been sexually assaulted).

Smith relies on Price v. Oropallo, No. 13-CV-563, 2014 WL 4146276 (N.D.N.Y. Aug. 19, 2014) to argue that, where an inmate-plaintiff sends a letter to prison officials regarding the inmate's fear of a bunkmate, and where the officials had no "knowledge of, or personal involvement in" placing the bunkmates together, nor were the officials "aware of" the bunkmate's dangerousness, the plaintiff's case cannot survive summary judgment. See Defs.' Mem. at 12 (citing Price at *9-10). However, Price is distinguishable.

Price was decided on summary judgment rather than, as here, a motion to dismiss, a distinction that matters because "personal involvement is a question of fact." See Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013). In Grullon, the Second Circuit reversed the district court's dismissal of an inmate's § 1983 claim because an earlier case "invoked by the district court" in granting the defendant prison warden's motion to dismiss, Sealey v. Giltner, 116 F.3d 47 (2d Cir.1997), "did not involve a dismissal pursuant to Rule 12(b)(6) for failure to state a claim," but instead "was dismissed on summary judgment." Id. The Second Circuit had affirmed Sealey on summary judgment because "the record . . . showed that [the Sealey defendant] had in fact taken steps to have the prisoner's grievance resolved." Id. By contrast, since there was no equivalent factual record in Grullon itself, and thus no evidence as to whether the Grullon defendant had responded to the inmate's complaints, the Second Circuit reversed the district court's finding of no personal involvement. Id. Here, there is likewise no evidence as to what action Smith may or may not have taken in response to Plaintiff's communications with her.

Further, solely at issue in Price was the defendant prison officials' failure to protect the plaintiff from a physical assault by his cellmate. But, in this case, Plaintiff also alleges that Smith failed to protect him from retaliatory action by other correction officers, which took the form of

21

putting Plaintiff in harm's way for sexual assault. See Compl. ¶ 24 ("Plaintiff told defendant,

[sic] Smith that he fears for his life and safety, because of the threats made by defendant[] Fleury

. . . ."); see also Hayes v. Dahkle, 2018 WL 7356343, at *18–19 (N.D.N.Y. Dec. 11, 2018),

report and recommendation adopted, 2019 WL 689234 (N.D.N.Y. Feb. 19, 2019) (finding

personal involvement at the motion to dismiss stage where plaintiff expressed his fear regarding

a certain correction officer to defendant prison official). Under these circumstances, Price is

inapposite.

Smith's remaining objections largely restate points raised in Defendants' Motion for

Summary Judgment and Reply. Compare Objs. at 5–6 ("Plaintiff did not allege that defendant

Smith: (1) knew plaintiff was going to be placed with a bunkmate that would sexually assault

him; (2) made the decision to place plaintiff's bunkmate in his cell with him; (3) was ever

informed who plaintiff's bunkmate was; or (4) was aware of whether his bunkmate had any prior

record of violence or sexual assault.") with Defs. Mem. at 12 ("[T]here are no allegations in the

Complaint which plausibly suggest that defendant[] Smith . . . : (1) made the decision to place

plaintiff's bunkmate in his cell with him; (2) were ever informed who plaintiff's bunkmate was;

or (3) were aware of whether his bunkmate had any prior record of violence or sexual assault.")

and Reply at 9 ("[P]laintiff has not alleged any facts plausibly suggesting that defendant Smith:

(1) made the decision to place plaintiff's bunkmate in his cell with him; or (2) was aware of

whether his bunkmate had any prior record of violence or sexual assault."). Accordingly, the

Court reviews these portions of the Report-Recommendation only for clear error and—for the

reasons stated above and in the Report-Recommendation—finds none.

**<u>C.</u>**      **<u>Defendant's Requests to Depose Plaintiff and for an Evidentiary Hearing</u>**

The Federal Rules of Civil Procedure require that a party obtain leave of court when seeking to depose an individual "confined in prison." Fed. R. Civ. P. 30(a)(2)(B). Additionally, because "exhaustion is a matter of judicial administration," a plaintiff "is not entitled to a jury trial relating to his exhaustion of administrative remedies." Woodward v. Lytle, No. 16-CV-1174, 2018 WL 6179427, at *3 (N.D.N.Y. Nov. 27, 2018) (citing Messa, 652 F.3d at 308–10). For this reason, "the court, not a jury, determines factual disputes regarding an inmate's alleged failure to exhaust." Id.

The Report-Recommendation does not address Defendants' request for "an opportunity to depose Plaintiff on the limited issue of exhaustion followed by an evidentiary hearing pursuant to Messa v. Goord, 652 F.3d 305 (2d Cir. 2011)," in the event their summary judgment motion is denied. See generally R. & R. Presumably, this is because such a deposition and hearing would be unnecessary. As Magistrate Judge Stewart explains in the Report-Recommendation:

> There appears to be no question that Plaintiff alleged to prison officials that he was the victim of a sexual assault and that he received notice from the IGP Supervisor stating his PREA claim has been exhausted for PLRA purposes, and thus his report was documented as required. Pursuant to DOCCS Directive 4040 that was sufficient to deem his claims regarding the alleged sexual assault exhausted. This was sufficient to exhaust his administrative remedies.

R. & R. at 8 (citations omitted). The Court agrees with this explanation and finds that a deposition and Messa hearing on exhaustion issues are unnecessary at this time. Should Defendants submit evidence calling into question whether Plaintiff "allege[d] being the victim of sexual abuse or sexual harassment [and] reported the incident to facility staff," Directive 4040 § 701.3(i), they are free to renew the request then.

**V.**     **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 39) is **APPROVED and ADOPTED in its entirety**; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 24) is **DENIED**; and it is further

**ORDERED**, that Defendants Martuscello and Prack's Motion to Dismiss (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED**, that the Clerk shall terminate Defendants Martuscello and Prack from this action; and it is further

**ORDERED**, that Defendant Smith's Motion to Dismiss (Dkt. No. 24) is **DENIED**; and it is further

**ORDERED**, that Defendants' request to depose Plaintiff on the limited issue of exhaustion of remedies followed by an evidentiary hearing pursuant to Messa v. Goord, 652 F.3d 305 (2d Cir. 2011) (Dkt. No. 24) is **DENIED** with leave to renew upon the submission of sufficient evidence; and it is further

**ORDERED**, that the Clerk serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     September 18, 2019
                Albany, New York

Lawrence E. Kahn
U.S. District Judge